UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HERMAN TAMRAT,

    Plaintiff,

    v.

ERICK RHODES, et al.,

    Defendants.

Case No. 20-cv-01323-PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 44

    Plaintiff, a former county detainee and current state prisoner, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983. He alleges that defendant police officers Rhodes and Albini illegally arrested and detained him and used excessive force during the arrest. Defendants filed a motion for summary judgment on the merits. Plaintiff filed an opposition. For the reasons set forth below, the motion for summary judgment is granted.

**MOTION FOR SUMMARY JUDGMENT**

**Legal Standard**

    Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

    The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence

of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

**Facts**

A review of the record indicates that the following facts are undisputed unless otherwise noted:

On December 2, 2018, defendant Rhodes was working as a uniformed patrol officer with the Santa Rosa Police Department.  Motion for Summary Judgment ("MSJ") Rhodes Decl. ¶ 4.  At approximately 4:56 p.m., Rhodes was dispatched to Coddington Mall with other officers due to a report of suspect who had charged mall security staff with a knife and had been pepper sprayed.  *Id*. ¶ 6; Fritsch Decl. Ex. B at 3 of 5.  Rhodes arrived at approximately 5:01 p.m. and observed defendant officer Albini with his firearm out and nondefendant Wagner with her taser out pointed at plaintiff.  MSJ, Fritsch Ex. E, Rhodes Video at 0:33-38.[1]  Plaintiff was sitting on a planter hunched over.  *Id*.  Officers were ordering plaintiff to get down on his knees, but plaintiff was not complying.  *Id*.  Plaintiff then raised his hands, but still did not comply with orders to get on his knees.  *Id*. at 0:42-1:00.  Plaintiff then stood up with his hands up and repeatedly said he could not breathe or see, but still did not get down on his knees, despite repeated orders from officers.  *Id*. at 1:00-1:12.  Plaintiff was told that an ambulance was waiting but that he needed to get on his knees.  He was told that he would receive help, but he had to get on his knees.  *Id*. at 1:12-1:30.

---

[1] Citations to Ex. E in Fritsch's declaration refer to the video footage and still photos.  The video footage is from body-warn cameras of the police officers.  The court refers to the time stamp on the video player.

2

Defendant Albini then walked up behind plaintiff and grabbed his arm and another officer grabbed plaintiff and they took him to the ground. *Id*. at 1:49-1:56. Defendant Rhodes told plaintiff to stop fighting as officers held him down and handcuffed his hands behind his back and looked for the knife that had been reported in his front pocket. *Id*. at 1:55-2:18. Plaintiff repeatedly stated he could not breathe as officers rolled him onto his side to look for the knife. *Id*. at 2:18-2:30; Fritsch Ex. E, Wagner Video at 1:52-2:38. Officers then requested medical aid be brought over to treat plaintiff. Fritsch Ex. E, Wagner Video at 2:45. A knife was recovered from plaintiff's pocket. Fritsch Ex. E, Albini Video at 3:08. Plaintiff was then allowed to sit up. Fritsch Ex. E, Wagner Video at 3:19. Medical help arrived and was informed that plaintiff had been pepper sprayed. *Id*. at 4:00-4:16. Approximately 90 seconds elapsed from when officers first grabbed plaintiff and took him to the ground and handcuffed him until he was allowed to sit up. *Id*. at 1:51-3:18. Another officer gave Defendant Rhodes a black collapsible knife that was recovered from plaintiff. Fritsch Ex. E, Albini Video at 3:08; Ex. E. Photos.

Once plaintiff was secured in handcuffs, Rhodes began to speak to the victims and witnesses. Fritsch Ex. E, Rhodes Video at 3:12-49:05. A security guard at the mall stated that plaintiff was charging his phone in the mall when a security guard went to speak to him, plaintiff became irate and started to threaten the security guards. *Id*. at 3:35-3:50. Plaintiff then put his hand in his pockets and removed a knife. *Id*. at 3:50-3:59. One of the security guards then sprayed plaintiff with pepper spray. *Id*. at 3:59-4:01.

A security guard at the mall stated that his body-warn camera recorded the entire incident. *Id*. at 18:15-18:30. Rhodes viewed the security guard body-warn camera video which was clearly visible with Rhode's body-warn camera. *Id*. at 39:00-45:10. The video shows several security guards speaking to plaintiff who began yelling and cursing at the security guards and plaintiff tensed and got into a fighting stance. *Id*. at 39:00-39:19. Plaintiff then put his hand in his pocket, takes out an object, unfolds it and states that, "I'll put some holes in you, bitch-ass nigga." *Id*. at 39:15-39:30. It is then apparent that

plaintiff is holding an unfolded knife in his right hand.  *Id*. at 39:30-39:32.  Plaintiff then lunges with his knife at one of the security guards trying to stab him.  *Id*. at 39:32-39:36.  A security guard then pepper sprayed plaintiff in the face.  *Id*. at 39:36-39:40.  Plaintiff begins to walk away as the security guards follow him and yell to call the police.  *Id*. at 39:40-40:05.  Plaintiff walks to a water fountain where he washes his face.  *Id*. at 40:20-40:40.  Plaintiff continues to walk around the mall while the security guards follow him and tell him to leave the property.  *Id*. at 40:40-45:00.  Plaintiff exits the mall, sits on a planter and the police arrive as discussed above with their body-warn camera evidence.  *Id*. at 45:00.  Based on this evidence, Rhodes believed that plaintiff assaulted one of the security guards with a knife in violation of California penal code section 245(a)1.  Rhodes Decl. ¶¶ 8, 9.  Plaintiff was later convicted of California penal code section 245(a)1, assault with a deadly weapon and California penal code section 664/422(a) attempted criminal threats.  Fritsch Decl. Ex. I.

       The ambulance staff examined plaintiff at the scene and found him to be in mild distress from the inhalation of pepper spray and a physical exam showed no sign of trauma and all of his vitals were within normal limits.  Fritsch Ex. F. at 3 of 12.  Plaintiff declined oxygen.  *Id*.  Plaintiff was taken to the emergency room where he reported burning pain in his face but had no respiratory distress and exhibited normal range of motion for his neck and musculoskeletal system.  Fritsch Ex. G at 3-5 of 16.  Plaintiff changed, showered and was discharged to jail.  *Id*. at 7 of 16.  At the jail, plaintiff reported sneezing, stuffy nose and sore throat, but denied any trauma or loss of consciousness within the past one to two days and denied any pain or other medical problems.  MSJ. Fritsch Ex. H at 2-3 of 10.

       The City Clerk for the City of Santa Rosa oversees a log for claims against the city.  Williams Decl. ¶¶ 4, 5.  The Clerk reviewed the claims in this action and searched the log and found no record of plaintiff filing a claim against the city.  *Id*. ¶¶ 7-9.  Nor is there any record of a claim filed by plaintiff with the Office of the City Attorney of Santa Rosa.  MSJ, Fritsch Dec. ¶¶ 7, 8.

4

# ANALYSIS

**Legal Standard**

A claim of unlawful arrest is cognizable under § 1983 for violation of the Fourth Amendment's prohibition against unreasonable search and seizure if the complaint alleges that the arrest was without probable cause or other justification. *See Pierson v. Ray*, 386 U.S. 547, 555-558 (1967); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 n.1. (9th Cir. 2015) (absence of probable cause is essential element of § 1983 false arrest claim). And a claim of unlawful detention/imprisonment is cognizable under § 1983 for violation of the Fourteenth Amendment's guarantee of due process if the arrest was without probable cause or other justification and the defendant knew or should have known that plaintiff was entitled to release. *See Baker v. McCollan*, 443 U.S. 137, 142-145 (1979); *Lee v. County of Los Angeles*, 250 F.3d 668, 684-85 (9th Cir. 2001) (plaintiff stated due process claim where police allegedly arrested plaintiff's son without probable cause, detained him without verifying that he was the person for whom police had an arrest warrant, despite his obvious mental incapacity, and detained him for one day before extradition hearing, which led to his incarceration in another state for two years). *But cf. Gant v. County of Los Angeles*, 772 F.3d 608, 619, 621-22 (9th Cir. 2014) (because plaintiff did not inform defendants of his mistaken identity and because he received a prompt hearing, his due process claim based on unlawful post-arrest detention failed).

An allegation of the use of excessive force by a law enforcement officer in effectuating an arrest states a valid claim under 42 U.S.C. § 1983. *See Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir. 1986), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989); *see also Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641-42 (9th Cir. 2018) (pro se allegations that police officers "beat the crap out of" plaintiff and caused him severe injury enough to support a legally cognizable claim under § 1983). Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard.

*See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

"To determine whether officers used excessive force during an arrest, courts balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396). In the Ninth Circuit, evaluation of an excessive force claim under *Graham* involves three steps: (1) assessment of the severity of the intrusion on Fourth Amendment rights by evaluating the type and amount of force used; (2) evaluation of the government's interest in the use of force; and (3) balancing the gravity of the intrusion on the individual with the government's need for the intrusion. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011). "The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of search or seizure.'" *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1542 (2017) (alteration in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Defendants met their burden in demonstrating the absence of a genuine issue of material fact with respect to the claim of an unlawful arrest and detention. Defendants have shown that there was probable cause and justification to arrest and detain plaintiff. There were multiple witnesses who stated that plaintiff had brandished a knife and attempted to stab one of the security guards. There was video evidence that showed plaintiff attempting to stab a security guard and plaintiff was later convicted of attempting to stab one of the guards. Summary judgment is granted to defendants for this claim.

Defendants have also met their burden in demonstrating the absence of a genuine issue of material fact with respect to the claim of excessive force. It is undisputed that defendants were responding to a report that plaintiff had charged a security guard with a knife. It is also undisputed that plaintiff did not comply with commands to get on his knees. The court has viewed the video evidence and defendants only used a low level of force to take plaintiff to the ground in a controlled manner and handcuff him. While several officers were holding plaintiff down, the entire incident of subduing plaintiff only

lasted approximately ninety seconds and then plaintiff was allowed to sit up and receive medical attention. While plaintiff repeatedly stated he could not breathe, it is clear that this was not due to defendants' actions, but because of a security guard pepper spraying plaintiff after the attempted stabbing. It is also undisputed that plaintiff did not suffer injuries from defendants' actions. Plaintiff only complained of injuries related to the pepper spray when being treated by first responders, at the emergency room and at jail.

With respect to the legal standards set forth above, defendants are entitled to summary judgment. Defendants were responding to a report of an individual who had charged at the victim with a knife. Defendants provided plaintiff multiple opportunities to follow directions, but plaintiff did not comply. Defendants had a strong interest in subduing plaintiff in light of the reported crime and only used minimal force to subdue him and the entire incident was very quick. The totality of the circumstances justified this use of force to subdue plaintiff.

Plaintiff presents many arguments that the video footage was manipulated, and that the court should ignore it. Plaintiff's arguments without support are insufficient to defeat summary judgment. "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). The video footage confirms defendants' account of the incident. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving while attempting to evade capture, utterly discrediting plaintiff's claim that there was little or no actual threat to innocent bystanders). Summary judgment is granted for defendants.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  *Id*. at 205.  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  *Pearson*, 555 U.S. at 236.

The court has not found a constitutional violation, and even if there was a violation, defendants would be entitled to qualified immunity.  It would not be clear to a reasonable officer that arresting an individual who had just attempted to stab someone would be a constitutional violation.  Nor would it be clear to a reasonable officer that using minimal force to subdue an individual who just attempted to stab someone and was not complying with orders would be a constitutional violation.

**State Law Claims**

The California Tort Claims Act, *see* Cal. Gov't Code §§ 810, et seq. -- commonly referred to as the California Government Claims Act by the courts, *see City of Stockton v. Sup. Ct*., 42 Cal. 4th 730, 741-42 (Cal. 2007) -- requires a person to present his claim to the California Victim Compensation and Government Claims Board ("Board") before he

8

may file an action for damages against a California governmental entity or employee "for death or for injury to person or to personal property." Cal. Gov't Code § 911.2; see Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2. The Government Claims Act has strict time limits for filing such a claim with the Board and for filing an action in court after the rejection of such a claim. A claimant must present his claim to the Board within six months of the accrual of the cause of action. See Cal. Gov't Code § 911.2. Additionally, an action against a governmental entity or employee covered by the claims-presentation requirement must be filed within six months following written notice of rejection of the claim by the Board. See Cal. Gov't Code § 945.6(a)(1). Timely claim presentation is "a condition precedent to plaintiff's maintaining an action against [a state employee or entity] defendant." *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240 (Cal. 2004). The failure to include the necessary allegations about claim presentation makes the complaint subject to attack for failure to state a cause of action. *Id.*

In this case, plaintiff was provided several opportunities to demonstrate compliance with the Government Claims Act, but he failed to offer any evidence. Docket Nos. 32, 34, 35, 36. Nor has he presented any arguments regarding compliance in his oppositions to summary judgment. Docket Nos. 56, 57, 58, 74. Defendants have presented evidence that no claim was filed, which plaintiff has not contested. Plaintiff's state law claims are dismissed for failure to comply with the Government Claims Act.

## CONCLUSION

1. Defendants' motion for summary judgment (Docket No. 44) is **GRANTED**.
2. The clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: January 21, 2022

PHYLLIS J. HAMILTON
United States District Judge